UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TOURNAHU, et al.,<br>    Plaintiffs,<br>v.<br>PEGGY FLYNN, et al.,<br>    Defendants. | Case No. 22-cv-03220-EMC<br><br>**ORDER DENYING PLAINTIFF THORNTON'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Docket No. 66 |

Pro se Plaintiff Melody Thornton moves the Court for a temporary restraining order and preliminary injunction. Docket No. 66 ("Mot."). Ms. Thornton states that she no longer resides at the People's Village and is now camping in Petaluma. *Id.* Ms. Thornton seeks an order enjoining the Petaluma Police Department from "harassing" her while she camps. *Id.*; *see also* Docket No. 66-1 ("Thornton Decl.") at 3.

For the following reasons, the Court **DENIES** Ms. Thornton's motion for temporary restraining order and preliminary injunction.

### I.     RELEVANT BACKGROUND

The Court previously permitted Defendants to abate the Steamer Landing Park encampment on June 13, 2022. Docket No. 22. The Court required Defendants to make alternative housing offers to residents of the encampment. *Id.* Thereafter, Plaintiff Thornton became a resident in the City's People's Village, a complex of non-congregate, "tiny home" units. *See* Docket No. 69 ("Opp.") at 3; Mot. at 1. Thornton declares that on August 1, 2022, she was "kicked out of [her] unit at People's Village because of trash and personal items being visible in the front of [her] unit." Thornton Decl. at 2. Accordingly, Thornton states she is now camping in

Petaluma. Mot. at 1. Thornton declares that "[b]efore [she] came to People's Village, [she] was being harassed by Petaluma Police on an almost daily basis." Thornton Decl. at 3. "Now that [she is] back on the streets, [she is] fearful and concerned about future encounters with the Petaluma Police Department." *Id.* She believes that "police are going to start harassing [her] again," so she states she "need[s] the court's protection." Mot. at 1. Accordingly, Thornton moves for the Court for a temporary restraining order and preliminary injunction. *Id.*

Plaintiff Thornton did not describe the conduct by the Petaluma Police she believed to be "harassing." The Court interpreted Plaintiff Thornton's allegation to refer to encompass the threat of arrest. Thus, the Court ordered Defendants to response to Thornton's motion, and specifically instructed Defendants "to respond to Plaintiff's allegation that she is at risk of arrest by the City." Docket No. 68.

In response, Defendants explained that the City and its community partner organization, COTS, have made efforts to assist Plaintiff Thornton by providing her with access to shelter on seven occasions between 2017 and 2022. Opp. at 3. Defendants stated that Thornton was required to leave the People's Village due to repeated violations of the facility's rules. *Id.* at 3-4; Docket No. 69-1 ("Questoni Decl.") ¶¶ 8-14. Defendants state that despite Thornton's removal from the People's Village, Thornton remains eligible to receive support services from COTS, and may be eligible to return and to receive a bed at the facility "once she is willing to accept the support and services required to address the offending behavior." *Id.* at 5; Questoni Decl. ¶ 15.

Furthermore, in the absence of any details clarifying what Thornton alleges to be Defendants' "harassing" conduct, Defendants provided an overview of the Petaluma Police Department's approach to engaging unhoused residents:

> In relation to the unsheltered community members, the City's officers will routinely check in while also routinely inquiring whether the individuals are willing to accept services and/or offers of shelter. While those contacts are typically positive, there are circumstances where individuals are hesitant or reluctant to engage with officers. In the majority of those situations, the City's officers simply walk away and end the contact. On other occasions, those contacts can reveal potential criminal conduct or situations that require intervention, such as if an individual is intoxicated and poses a threat to either themselves or others.

2

Opp. at 5; Docket No. 69-2 ("Lt. Lyons Decl.") ¶¶ 5-6.  Defendants further explained,

> Prior to the encampment at Steamer Landing being abated, officers from the City of Petaluma Police Department would regularly visit the site and meet with the campers, including Ms. Thornton. During those visits, the officers would attempt to advise each of the campers of the available services and shelter options. Following the Court issuing an Order authorizing the abatement of the encampment, the officers would also meet with the individual campers, again including Ms. Thornton, to notify them of the impending abatement and to share information on available shelter options. Unfortunately, many of the campers appeared to perceive the officers' outreach efforts as harassing and unwelcome.

*Id.* at 6.  Finally, with regards to the Court's specific question as to the risk of arrest that Ms. Thornton faces while camping, Defendants explained:

> All individuals, including Ms. Thornton, are subject to arrest *only* if they violate the law and probable cause exists for their arrest.  The City specifically trains and instructs its officers to fully comply with the relevant state and federal laws pertaining to when an arrest is lawful, including as set forth in Penal Code section 836.  If an unsheltered individual attempts to camp in a prohibited location within the City, they are likely to be contacted by officers from the Petaluma Police Department. During that contact, the officers will advise the individual of the available shelter options and will request the individual voluntarily comply with the applicable laws.  If voluntary compliance is not obtained, the individual is subject to citation. . .
>
> Only if the violations persist and/or there are additional aggravating circumstances (i.e., outstanding warrants, serious safety risks such as fire or weapons) would an individual be arrested.  The City's preference and practice has been and remains to attempt to assist its unsheltered community members by connecting them with the services that include a path to long-term housing, as opposed to arresting individuals who are in need of assistance.  Where available or feasible, the City will attempt to steer an individual to those service providers, rather than proceed with a citation or arrest.

*Id.* at 6-7; Lt. Lyons Decl. ¶¶ 8-11.

## II.     DISCUSSION

To succeed on a motion for temporary restraining order or preliminary injunction, a party must show that (1) they are likely to succeed on the merits of their claim; (2) they will suffer irreparable harm in the absence of relief; (3) the balance of hardships tips in their favor; and (4) a preliminary injunction is in the public interest.  *See Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The four-part test is also satisfied if "serious questions going to the merits [are] raised and the

balance of hardships tips sharply in the plaintiff's favor" so long as there is also a likelihood of irreparable harm and an injunction would be in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

      Here, Plaintiff Thornton has not shown an entitlement to TRO or preliminary injunction under either formulation of the standard because she has not demonstrated a likelihood of irreparable harm. Thornton asserts that before she resided in the People's Village, she was "being harassed by Petaluma Police on an almost daily basis." Thornton Decl. at 3. "Now that [she is] back on the streets, [she is] fearful and concerned about future encounters with the Petaluma Police Department." Thornton does not describe the allegedly "harassing" conduct, nor does she explain the circumstances surrounding or giving rise to such "harassing" encounters. Thornton, further, does explain the harm that she suffered in those past encounters, nor what harm she anticipates she is likely to experience in the future. By contrast, the City explains that its practice is to send officers to conduct outreach to unhoused individuals, and to provide offers for services. Opp. at 5. The City represents that Plaintiff Thornton has received housing from the City and its community partner, COTS, on seven difference occasions since 2017, suggesting that the City and Plaintiff Thornton have engaged productively in the past. Opp. at 3. The City further represents that in the event that an unhoused individual declines to engage with the officer, the officer typically walks away from the situation. *Id.* Thus, to the extent that Plaintiff Thornton contends that the City will "harass" her by conducting outreach and attempting to engage her to make use of available support services, the Court cannot conclude that Plaintiff Thornton is likely to suffer irreparable harm.

      To the extent that Plaintiff Thornton asks to the Court to infer she is likely to suffer irreparable harm based on the prospect of her arrested for being unhoused, the record does not support such a conclusion. Plaintiff Thornton does articulate that the City has threatened her with arrest for camping. Moreover, the City represents that if an individual who is unhoused camps or otherwise resides in a prohibited location, the City *does not* immediately arrest the individual. Opp. at 6-7. Instead, the City advises the individual of available housing alternatives and requests that the individual move to a location where camping is not prohibited. *Id.* Even then, if an

1 individual does not comply, the City represents that it issues a citation, but does not arrest an
2 individual unless there are repeated violations or aggravating circumstances that warrant arrest.
3 *Id.* Throughout this litigation and related litigation regarding the City's practices with regards to
4 its unhoused population, the Court has observed the good faith efforts of the City to "attempt to
5 steer an individual to. . . service providers, rather than proceed with a citation or arrest." *Id.*
6 Accordingly, based on this record, the Court cannot conclude that Plaintiff Thornton faces likely
7 irreparable harm by being arrested for her status as an unhoused individual.

8     Moreover, the Court observes that, although the City does not state whether there are areas
9 in Petaluma where camping is not prohibited, Plaintiff Thornton has not argued that there are no
10 adequate housing options available to her, nor that camping is prohibited *everywhere* in the city.
11 *See* Docket No. 22 ("The Court explained that under *Martin v. Boise*, 920 F.3d 584, 617 (9th Cir.
12 2018), Plaintiffs are afforded protections only insofar as there are no adequate housing options
13 available to them. Even then, *Martin* suggests the City may have some power to restrict where
14 Plaintiffs may camp within the city."). Moreover, *Martin* may not apply so long as there are
15 spaces where unhoused individuals may camp without risking sanctions. Plaintiff has not shown
16 that no such spaces exist in Petaluma. The absence of any such allegations or evidence to this
17 effect further evinces Plaintiff's failure to demonstrate likely irreparable injury and also indicates
18 Plaintiff's failure to raise a serious question on the merits under *Martin*.

19     Thus, because Plaintiff has not demonstrated a likelihood of irreparable harm nor raised a
20 serious question on the merits, as necessary to warrant the issuance of a TRO or preliminary
21 injunction, Plaintiff's motion is **DENIED**.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff Thornton's motion for temporary restraining order and preliminary injunction.

This order disposes of Docket No. 66.

**IT IS SO ORDERED**.

Dated: August 18, 2022

_____
EDWARD M. CHEN
United States District Judge